# THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| IN RE:  JUDY WEATHERFORD, ) | CASE NO.: 03-15184-JW |
| ) | Chapter 13 |
| Debtor. ) | |
| ) | |
| ) | |
| JUDY WEATHERFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | ADV. PRO. NO. 08-_____JW |
| -vs- ) | |
| ) | |
| TIMMARK, a South Carolina Partnership, ) | |
| TIMOTHY SCHWARTZ, MARK CAREY, ) | |
| CAREY HOLDINGS, INC., AND ) | |
| NATIONWIDE DEVELOPMENTS, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT FOR SANCTIONS, DAMAGES AND ATTORNEY'S FEES FOR VIOLATION OF THE AUTOMATIC STAY
## 11 USC § 362(k) & 11 USC § 105(a)

NOW COMES the Debtor, and by counsel, alleges and complains of the Defendants, as follows:

### INTRODUCTION

Debtor, Judy Weatherford, by and through her undersigned attorney, Philip Fairbanks, brings her complaint for the imposition of sanctions and the award of damages, attorney's fees and injunctive relief, against Timmark, a South Carolina general partnership, its partners Timothy Schwartz, Mark Carey, Carey Holdings, Inc. and

Nationwide Developments, Inc., based upon willful violations of the "automatic stay" imposed pursuant to 11 USC § 362 upon the filing of a bankruptcy case.

JURISDICTION, PARTIES, AND VENUE

1. Plaintiff/Debtor is an individual adult citizen of the State of South Carolina, residing in the County of Beaufort, and was at all times relevant to this complaint, a debtor in the above-captioned Chapter 13 case.

2. Defendant Timmark[1] is, upon information and belief, a partnership formed and existing pursuant to the laws of the State of South Carolina, having its principal place of business, doing business, and owning assets in the County of Beaufort.

3. Defendants Timothy Schwartz and Marc Carey are, upon information and belief, adult citizens and residents of the County of Beaufort, South Carolina, and are and at all relevant times were partners in Timmark and controlling persons responsible for its actions.

4. Defendants Carey Holdings, Inc. and Nationwide Developments, Inc. are, upon information and belief, South Carolina corporations, and are and at all relevant times were partners in Timmark and controlling persons responsible for its actions.

5. This Court has personal and subject matter jurisdiction over this proceeding pursuant to 28 USC § 1334, 28 USC § 157(b)(2), and the Order of Reference entered by the District Court.

6. Venue is proper in this district pursuant to 28 USC § 1409(a), as this proceeding arises under and relates to a case under the bankruptcy Code that is pending here.

---

[1] The name "Timmark" does not appear in any guise among the business listings of the Secretary of State of South Carolina. The Defendants Timothy Schwartz and Mark Carey have used the appellation in their own legal papers, and "Timmark" is listed as a real estate owner. In the real estate documents, it appears that "Timmark" is a partnership consisting of Nationwide Developments, Inc., of which Defendant Schwartz is "President," and Carey Holdings, Inc.,of which Defendant Carey is "President."

2

7. This matter is a core proceeding and this Court has jurisdiction to enter a final order. In the event this case is determined to be non-core, Plaintiff consents to entry of a final order by the Bankruptcy Judge.

## FACTUAL ALLEGATIONS

8. Debtor filed her Chapter 13 bankruptcy on December 5, 2003. It was confirmed on March 30, 2004.

9. On March 10, 2006, Debtor's case was dismissed for failure to make payments to the trustee. However, on May 12, 2006, after notice and hearing, the Order dismissing her case was vacated by Order of this Court. Since then Debtor has remained current in her plan payments and otherwise performed her duties as a debtor, according to her Chapter 13 plan and otherwise, and has received a discharge, dated December 5, 2007, pursuant to 11 USC § 1328(a).

10. In January, 2003, acting solely on behalf of and as agent for Finishing Touches, an unincorporated business owned and operated by her brother, by which she was employed, Debtor filed a complaint in the Magistrate's Court for Beaufort County, South Carolina, against Timothy Schwartz, Marc Carey and Nationwide Developments, Inc., of which Defendant Schwartz is President, with which Finishing Touches had contractual relations. [Exhibit A. All exhibits are attached to the Declaration accompanying this Complaint.]

11. On or about February 13, 2003, Larry Weidner, an attorney representing Timmark and its partners, filed an Answer and Counterclaim in the Beaufort County Magistrate's Court, alleging that Timmark should have been named defendant in the suit by Finishing Touches, and that Schwartz and Carey were not true and proper defendants.

The counterclaim alleged that Debtor, in her individual capacity, among others, should have been named as a plaintiff in the case. The counterclaim sought damages exceeding the Magistrate's jurisdictional limits jointly and severally against Debtor and other parties alleged to be "proper" plaintiffs. Weidner also moved on his clients' behalves to have the case transferred to the Court of Common Pleas, which it was.  [Exhibits B and C].

12.    Debtor was not served with and did not otherwise receive a copy of the Answer and Counterclaim, and remained unaware of the actions of Timmark, Schwartz, and Carey in response to the suit filed by Finishing Touches generally, and in particular, as they related to her personally.

13.    Two years later, in April and May, 2005, after no activity of which Debtor was aware had occurred in either the Magistrate's Court or the Circuit Court, Mr. Weidner resurrected the case by sending discovery requests to Finishing Touches and filing a motion to compel in Circuit Court. The motion requested that the "Plaintiffs' [sic] Complaint" be stricken and any affirmative relief be denied them; that the allegations of the Answer and Counterclaim "be taken as established;" and that the Court enter "[a]n Order granting judgment by default against Plaintiffs" and award other relief against Debtor and her brother for their supposed contemptuous refusal to comply with the rules of discovery.  [Exhibit D].

14.  In late June, 2005, Mr. Weidner filed an Affidavit of Default and Order for Entry of Default against Debtor (and other counterclaim defendants) signed by the presiding judge of the Court of Common Pleas. Both the Motion to Compel and the Affidavit of Default are accompanied by Certificates of Service certifying that service was made upon Finishing Touches. No other party was served according to the

4

certificates of service. Nor was Debtor apprised that the action she had originally filed in Magistrate's Court had been dismissed for lack of prosecution in the Circuit Court. [Exhibits E, F, and G].

15. Debtor denies receiving the pleadings and further denies actual knowledge of those documents or of the existence or continuation of the proceedings, until September, 2005, when her brother received a Notice of Hearing requiring his and Debtor's presence, apparently for the purpose of determining damages. [Exhibit H].

16. When he received that Notice, Debtor's brother called the Debtor, who immediately called Mr. Weidner's office and asked to speak to him.

17. When she was told that Weidner was not available, Debtor told his secretary the reason for her call. She stated that she was in a Chapter 13 bankruptcy and provided her case number and the name and telephone number of her bankruptcy lawyer. Finally, she requested that Mr. Weidner promptly be given that information and demanded he call her or her bankruptcy attorney immediately.

18. After hearing nothing from Mr. Weidner for about a week, Ms. Weatherford went to Mr. Weidner's office. She again asked to speak to Mr. Weidner and was again told he was not available. Ms. Weatherford repeated the information she provided during the earlier telephone call, to wit: her bankruptcy case number and her bankruptcy lawyer's name and address. She also gave Mr. Weidner's employee a copy of the Form B9I Notice of Chapter 13 Bankruptcy Case, issued by this Court. Mr. Weidner's employee stated that she had related the same information to Mr. Weidner following Debtor's telephone call of the previous week.

19. Within several weeks after she visited Mr. Weidner's office, Debtor's brother called to tell her he had received a notice from the court to the effect that the "case had been dismissed."

20. Debtor went to the Magistrate's Court to confirm that information. She was told that the information was correct and that she needed to take no additional action. Debtor reasonably assumed that the dismissal was the result of actions taken by Mr. Weidner in response to the information she had provided about her bankruptcy case. In fact, it was only the Magistrate's Court action that was dismissed – Defendants were continuing to prosecute the Common Pleas action despite having been advised of Ms. Weatherford's bankruptcy case, and without the knowledge of Debtor or her counsel.

21. On December 15, 2005, at Defendants' behest, the Master-in-Equity for Beaufort County issued an Order of Judgment against, *inter alia,* Debtor, in the amount of $34, 875.00. [Exhibits I, J, and K].

22. On or about January 6, 2006, Defendants delivered an execution of that judgment to the Sheriff of Beaufort County.

23. On or about March 2, 2006, the Sheriff of Beaufort County sent Defendants' attorney a "Nulla Bona" letter informing them that "[t]he defendant has filed bankruptcy, Bankruptcy case number 03-15184." [Exhibit L].

24. Despite the Nulla Bona letter issued by the Sheriff, on or about March 21, 2006, Debtor received a Notice of Levy and intent to advertise Debtor's real estate for sale unless payment was made within seven days pursuant to the Order of Judgment in the amount of $36,896.00. [Exhibit M].

6

25. Additionally, Mr. Schwartz personally made at least one verbal threat directly to Debtor that unless Defendants received weekly payments of nearly $7,500.00 toward the judgment, Debtor's home would be sold without delay.

26. Before she was able to contact her attorney, who was temporarily unavailable, and under extreme emotional duress at the prospect of having law enforcement officers remove her and her family from their home and sell it, Debtor paid $14,758.56 to the Beaufort County Sheriff's Department as a result of those threats. [Exhibit N].

27. When, after several weeks, she was able to contact her bankruptcy attorney, he filed a motion and on May 12, 2006, this Court vacated the Order dismissing Debtor's case, and the automatic stay was reinstated.

28. As a result of the trauma caused by the prospect of losing her home, Debtor was required to seek medical treatment and suffered extreme emotional distress and suffering.

29. Debtor has incurred attorney's fees and other expenses as will be proved at trial.

30. Despite the reinstatement of the stay, Defendants again attempted to have the Sheriff levy upon Debtor's property in satisfaction of their judgment in June, 2006.

31. On June 26, 2006, the Sheriff's Department sent Defendants' attorney a second "Nulla Bona" letter. That letter also stated that Ms. Weatherford had filed bankruptcy and provided her case number. [Exhibit O].

32. Debtor heard nothing more about the Timmark matter until on or about December 6, 2007, when she received a telephone call from the Beaufort County

7

Sheriff's Department, again threatening to sell her home if she failed to satisfy the balance of the Timmark judgment at the earliest possible time.

33. Ms. Weatherford called her attorney, who immediately provided the Sheriff's Office with evidence of her case number.

## FOR A FIRST CAUSE OF ACTION
## VIOLATION OF THE AUTOMATIC STAY

34. Each allegation set forth above is hereby realleged as fully as if here set forth verbatim.

35. Defendants had actual notice of Debtor's bankruptcy case no later than September, 2005, when Debtor personally telephoned and visited Defendants' attorney's office and provided that information, including her case number and the identity of her bankruptcy attorney on two occasions.

36. Despite notice, Defendants willfully violated the automatic stay when, on December 15, 2005, Defendants, through their attorney, procured an Order of Judgment against Debtor personally, in favor of Timmark.

37. Despite notice, Defendants willfully violated the automatic stay when, on December 20, 2005, Defendants served the Order of Judgment by mail in an attempt to coerce payment from Debtor.

38. Despite notice, Defendants willfully violated the automatic stay when, on or about January 6, 2006, Defendants delivered an execution of the judgment to the Sheriff of Beaufort County.

## FOR A SECOND CAUSE OF ACTION
## VIOLATION OF THE AUTOMATIC STAY

39. Each allegation set forth above is hereby realleged as fully as if here set

8

forth verbatim.

40. Defendants had additional actual notice of Debtor's bankruptcy case no later than March 6, 2006, when the Sheriff of Beaufort County sent their attorney a "Nulla Bona" letter advising, *inter alia,* that "[t]he defendant has filed bankruptcy, Bankruptcy case number 03-15184."

41. Defendants willfully violated the automatic stay when, despite the "Nulla Bona" letter issued by the Sheriff, on or about March 28, 2006, Debtor received a Notice of Levy and intent to advertise Debtor's real estate for sale unless payment was made within seven days pursuant to the Order of Judgment in the amount of $ 36,896.00.

42. Despite notice, Defendants willfully violated the automatic stay when, in March or April, 2006, as a result of Defendants' attempts to collect the judgment, Debtor paid a total of $14,758.56 to the Sheriff of Beaufort County, which was, upon information and belief, delivered to Defendants or Defendants' counsel.

43. Despite notice, Defendants willfully violated the automatic stay when, sometime in late May or June, 2006, Defendants again attempted to have Debtor's property levied upon in satisfaction of the judgment.

### FOR A THIRD CAUSE OF ACTION
### VIOLATION OF THE AUTOMATIC STAY

44. Each allegation set forth above is hereby realleged as fully as if here set forth verbatim.

45. On June 26, 2006, the Sheriff of Beaufort County sent Defendants' attorney a second "nulla bona" letter, which also advised that Debtor was in a bankruptcy case and provided the case number.

46. Despite notice, Defendants willfully violated the automatic stay when, on

December 6, 2007, Debtor was contacted by the Beaufort County Sheriff's Department, who informed her that Timmark was again pursuing its judgment and that unless she produced funds sufficient to satisfy the balance of the judgment, her home would be sold.

### FOR A FOURTH CAUSE OF ACTION
### VIOLATION OF THE AUTOMATIC STAY

47. Each allegation set forth above is hereby realleged as fully as if here set forth verbatim.

48. Despite notice, Defendants repeatedly and willfully violated the automatic stay when, despite notice of Debtor's bankruptcy case, they failed to take action to vacate the judgment they had procured in violation of the automatic stay, instead allowing, if not encouraging, successive efforts to have it enforced and collected.

### FOR A FIFTH CAUSE OF ACTION
### CONTEMPT OF COURT
### 11 USC § 105(a)

49. Each allegation set forth above is hereby realleged as fully as if here set forth verbatim.

50. Defendants' numerous violations of the automatic stay constitute contempt of the order of this Court represented by the automatic stay of 11 USC § 362.

51. Defendants' contempt should be punished in order to preserve the dignity of the Court and the administration of justice and the Bankruptcy Code.

### PRAYER FOR RELIEF

Debtor respectfully prays for the following relief from this Court for Defendants' willful and contemptuous abuse of legal process and numerous violations of the "automatic stay" pursuant to 11 USC §362(k) and 11 USC § 105(a):

1.    Actual damages in an amount to be proved at trial;

2.   Pre-judgment interest on the actual damages;

3.   Damages for Debtor's emotional distress, humiliation, anguish, anxiety, and embarrassment caused by Defendants' unlawful conduct in an amount not less than $15,000.00;

4.   Attorney's fees and costs for bringing this action;

5.   Sanctions for the Defendants' contempt of Court;

6.   Punitive damages for Defendants' egregious and inexcusable conduct and failure to correct results of that conduct despite repeated notice and opportunities to do so;

7.   An Order requiring Defendants immediately to mark "satisfied" or to vacate the judgment at issue, to protect Debtor from the harmful credit effects of an unlawfully recorded judgment ; and,

8.   Such additional relief as the Court deems appropriate in the circumstances.

Respectfully Submitted,

*/S/ Philip Fairbanks*
Philip Fairbanks DCID # 756
1214 King Street
Beaufort, SC 29902
Telephone: (843) 521-1580
Telefax: (843) 521-1590
Attorney for the Debtor

April _____, 2008

Beaufort, South Carolina

11