# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Judith A. Weatherford,<br><br><br>Debtor(s).<br><br>Judy A. Weatherford,<br><br><br>Plaintiff(s),<br><br>v.<br><br>TIMMARK, Carey Holdings Inc.,<br>Nationwide Developments, Timothy<br>Schwartz, Mark Carey,<br><br><br>Defendant(s). | C/A No. 03-15184-JW<br><br>Adv. Pro. No. 08-80094-JW<br><br><br>Chapter 13<br><br>**AMENDED ORDER**[1]<br><br>**FILED**<br>at ___ O'clock & ___ min. ___M<br><br>APR 0 6 2009<br><br>United States Bankruptcy Court<br>Columbia, South Carolina (19) |

This matter comes before the Court upon the Complaint for Sanctions, Damages and Attorney's Fees for Violation of the Automatic Stay ("Complaint") filed by Judith A. Weatherford ("Weatherford") against Timmark, a South Carolina partnership ("Timmark"), and its partners, Timothy Schwartz ("Schwartz"), Mark Carey ("Carey"), Carey Holdings, Inc. ("Carey Holdings"), and Nationwide Developments, Inc. ("Nationwide") (collectively, "Defendants"). This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. The matters before the Court are determined to be "core" as defined in 28 U.S.C. § 157(b).

In the Complaint, Weatherford alleges that Defendants violated 11 U.S.C. §§ 362 and 105 by procuring a judgment against Weatherford while she was in bankruptcy,

---

[1]     This Order is being amended to better state the grounds for nondischargeability of Defendants' claim.

taking action to execute upon that judgment, collecting on the judgment and failing to vacate the judgment. Weatherford further asserts that these violations of the stay constitute contempt of court. She requests that the Court find the Defendants in willful violation of the automatic stay and award actual and punitive damages, pre-judgment interest on the actual damages, emotional distress damages, sanctions for contempt of court, and attorney's fees and costs. Weatherford also requests that the Court issue an order requiring Defendants immediately to mark "satisfied" or to vacate the judgment at issue.

After receiving the testimony, carefully considering all the evidence and weighing the credibility of the witnesses, the Court makes the following Findings of Fact and Conclusions of Law, pursuant to Fed. R. Civ. P. 52, made applicable in bankruptcy proceedings pursuant to Fed. R. Bankr. P. 7052.[2]

## FINDINGS OF FACT

1.    In January of 2003, in her capacity as an agent for Finishing Touches, Weatherford initiated a lawsuit, captioned Finishing Touches v. Nationwide Developments, Timothy Schwartz, and Mark Carey, in the Magistrate's Court for Beaufort County, South Carolina.

2.    On February 13, 2003, Larry Weidner ("Weidner"), an attorney representing Defendants, filed an Answer and Counterclaim on behalf of Timmark, alleging that Timmark should have been named as a defendant in the lawsuit and that Schwartz and Carey were not proper defendants. The Counterclaim was asserted against Judy Weatherford a/k/a Judy Tedford and David Weatherford a/k/a David Tedford d/b/a

---

[2]    To the extent that any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

Finishing Touches.  Since the Counterclaim sought damages exceeding the Magistrate's

jurisdictional limits, the case was transferred to the Court of Common Pleas for Beaufort

County on February 17, 2003 and was assigned Case No.: 03-CP-07-355 ("Timmark

Suit").

3.        On September 12, 2003, Judith Ann Tedford a/k/a Judith Weatherford and

David Wayne Tedford, Weatherford's ex-husband, filed a joint petition for bankruptcy

under Chapter 7 of the Bankruptcy Code, C/A No. 03-11413.  Neither the Statement of

Financial Affairs, filed September 26, 2003, nor the Schedules, filed September 12, 2003,

listed the Timmark Suit or its parties as creditors. On November 24, 2003, the case was

dismissed for the failure of the debtors to appear at the meeting of creditors.

4.        On December 5, 2003, Weatherford filed a petition for relief under

Chapter 13 of the Bankruptcy Code, C/A No. 03-15184 ("Weatherford's Bankruptcy

Case"). Weatherford did not list the Timmark Suit or its parties as creditors in her

Statement of Financial Affairs or Schedules. Weatherford's Chapter 13 Plan was

confirmed on March 30, 2004. The deadline for filing proofs of claim was April 26,

2004.

5.        On June 29, 2005, an Order of Entry of Default on the Counterclaim was

entered in favor of Timmark. On August 31, 2005, the state court Complaint was

dismissed for lack of prosecution, leaving the Entry of Default on the Counterclaim.

6.        In September of 2005, Weatherford alleges she contacted Weidner's office

twice by telephone to advise him of her bankruptcy case. She further alleges that she

delivered a copy of her Notice of Bankruptcy Filing to Weidner's office.[3] Defendants deny they were given or received any of these alleged notices of Weatherford's Bankruptcy Case.

7.    On December 15, 2005, an Order of Judgment on the Counterclaim was entered, awarding Timmark $34,875.00, with pre-judgment interest of eight and three-quarter percent (8 3/4 %) from November 8, 2002 through the entry of the Order and post-judgment interest at twelve percent (12 %) from the date of the entry of the Order until the judgment was satisfied. The record indicates that this Order was served on December 20, 2005.

8.    On January 6, 2006, Weidner sent an Execution Against Judgment to the Sheriff's Office of Beaufort County on behalf of Timmark to collect on the judgment rendered in the Timmark Suit. The Execution requested that the Sherriff take action to satisfy Timmark's judgment out of the personal property of the judgment debtor or the real property of the judgment debtor, if sufficient personal property could not be found.

9.    On March 2, 2006, the Sherriff sent Weidner a *nulla bona* letter, which advised that Weatherford had filed bankruptcy and provided her bankruptcy case number, which indicated a 2003 filing. At trial, Weidner testified that shortly before the receipt of the *nulla bona* letter, he received a phone message from his secretary indicating that Weatherford was filing bankruptcy and that Philip Fairbanks ("Fairbanks") was her bankruptcy attorney. After learning Weatherford was in bankruptcy, he relayed the information to Schwartz, who was his point-of-contact for Timmark.

---

[3]    Jerrel Armstrong, a friend of Weatherford, testified that he drove her to a professional building at some time and that she went into the office with papers, but did not return with them. However, he could not remember the name of the office building or the location of the offices. He also could not testify to Weatherford's reason for the visit other than that she was complaining about "them" taking her back to court and trying to take her house.

10.    On March 10, 2006, Weatherford's bankruptcy case was dismissed for nonpayment on the Chapter 13 Trustee's Motion.

11.    In mid-March, Schwartz informed Weidner that Weatherford's Bankruptcy Case (C/A No. 03-15184) had been dismissed, and Weidner confirmed this information by checking the bankruptcy court's records on PACER on March 20, 2006. The PACER report included the date of the bankruptcy filing and the history of the case through the dismissal; however, Weidner testified that he only looked at the last entry to see if the case had been dismissed.

12.    Pam Brown, a judgment clerk in the Beaufort County Sheriff's Office, testified at trial that her contact with Defendants was through Schwartz and that he came to the Sheriff's office after Weatherford's Bankruptcy Case was dismissed and requested that the execution be re-worked.

13.    On March 21, 2006, the Sherriff posted a Notice of Levy against Weatherford's house stating that unless $36,896.41 was paid to the Sherriff's office, not later than March 28, 2006, Weatherford's house was to be levied upon in order to satisfy Timmark's judgment. Weatherford attempted to contact Fairbanks for assistance on this matter; however, Fairbanks was out of the country. Therefore, to prevent the sale, Weatherford made two payments to the Sheriff's Office. Beaufort County records indicate that Weatherford made a payment of $7,379.28 on March 31, 2006 and a second payment of $7,379.28 on May 2, 2006. The records further indicate that the Sheriff's Office transferred these funds to Weidner.

14.    On March 23, 2006, upon his return from abroad, Fairbanks filed a Motion to Reconsider the dismissal of Weatherford's Bankruptcy Case.

15.    On May 11, 2006, after notice and a hearing, the Court entered an Order granting the Motion to Reconsider, thereby vacating the previous Order of Dismissal entered March 10, 2006 and re-instating the case.

16.    On June 26, 2006, the Beaufort County Sheriff's Office sent Weidner a second *nulla bona* letter indicating that Weatherford was in bankruptcy and providing Weatherford's bankruptcy case number (C/A No. 03-15184). Weidner received this second letter; however, even though the second letter was dated differently than the first, he testified that he mistakenly believed it was a duplicate of the first *nulla bona* letter. He did not check the bankruptcy court's records to determine the status of Weatherford's Bankruptcy Case.

17.    By letter dated August 7, 2006, Fairbanks advised Weidner that Timmark's continuation of the state court suit after December of 2003 was a willful violation of the stay, which rendered Timmark and its agents liable for Weatherford's damages. Fairbanks further advised that Timmark should vacate its judgment and reimburse Weatherford for the sums she expended as a result of the stay violation, including attorney's fees. Fairbanks also indicated that he would pursue a stay violation action if Weidner's clients and Weatherford could not agree on a resolution of the matter.

18.    By letter dated August 16, 2007, Weidner responded to Fairbanks that he had not received notice that Fairbanks was representing Weatherford in a bankruptcy action, and if he had received such notice, he would have responded by confirming both the representation and case. Weidner reprimanded Fairbanks for failing to inform him of his representation of Weatherford considering his knowledge of Weidner's representation

of Timmark and requested documentation of any proper notice provided to him or Timmark.

19.    By letter to Weidner dated August 17, 2006, Fairbanks responded that he was unaware of Weidner's representation of Timmark. Fairbanks also informed Weidner that "[a]ctual notice is not necessary and a creditor must 'un-do' the effects of a 'stay violation' whether or not it was 'willful.'" Fairbanks proposed that the parties reach a resolution of the matter, which would at the least require "the return of any sums collected from Ms. Weatherford pursuant to the judgment, and vacation of the judgment as [to] her personal liability."

20.    On December 5, 2007, the Bankruptcy Court entered an Order granting Weatherford a discharge after completion of her Chapter 13 plan. On January 23, 2008, the Court entered an Order Discharging the Trustee and Closing the Case.

21.    Shortly after receiving a discharge, Weatherford alleges she received a telephone call from the Beaufort County Sheriff's Department attempting to collect the remaining money owed from the Timmark Suit. After Weatherford received this call, she contacted Fairbanks for assistance, and on June 2, 2008, Fairbanks filed this action.

22.    On September 30, 2008, Weatherford filed a Motion for Summary Judgment as to Defendant's Liability for Violations of the Automatic Stay. Following a hearing on the merits, the Court denied her summary judgment motion, largely due to procedural defects.

23.    As of the date of the trial, neither of the payments Weatherford remitted to the Sherriff's office has been returned to her.

24.     On November 17, 2008, Timmark filed a Motion for Relief from

Judgment with the Court of Common Pleas for the Fourteenth Judicial Circuit to relieve

Weatherford from her final judgment in the Timmark Suit.

## CONCLUSIONS OF LAW

In order to determine the validity of the Complaint, the Court must consider three

related issues: (1) does Debtor's failure to schedule the Timmark Suit or the Defendants

affect this action or the dischargeability of the debt; (2) does the postpetition procurement

of the judgment in the Timmark Suit constitute a violation of the automatic stay pursuant

to 11 U.S.C. § 362[4] and, if so, what is its effect on the judgment; and (3) do Defendants'

actions constitute a "willful" violation under § 362(h)[5]?

**I.     Does Debtor's failure to schedule the Timmark Suit or the Defendants affect
       this action or the dischargeability of the debt?**

With certain exceptions not relevant here, a debtor who completes her payments

under a Chapter 13 plan is entitled to a discharge of "all debts ***provided for by the plan*** or

disallowed under section 502 of [the Bankruptcy Code]." 11 U.S.C. § 1328(a)(emphasis

added).   The phrase, "provided for by the plan," is commonly understood to mean that a

plan "makes a provision" for, "deals with," or even "refers to" a claim. Rake v. Wade,

508 U.S. 464, 474, 113 S.Ct. 2187, 2192 (1993). "A debt is 'provided for' by a Chapter

13 plan where the plan acknowledges the debt, even if the plan does not propose to make

any payments on the claim." Internal Revenue Service v. Hairopoulos, 118 F.3d 1240,

1244 (8th Cir. 1997)(citing In re Gregory, 705 F.2d 1118, 1122 (9th Cir. 1983)).

---

[4]       Further references to the Bankruptcy Code shall be made by section number only.  Unless
otherwise specified, citations to the Bankruptcy Code shall be to the version of the Code in effect at the
time of the petition, which was prior to the amendments by the Bankruptcy Abuse Prevention and
Consumer Protection Act of 2005 ("BAPCPA").  The amendments of BAPCPA would not alter the result
of this Order.
[5]       The provisions of section 362(h) are now codified under 11 U.S.C. § 362(k) following the
BAPCPA amendments.

However, the claims of creditors who were not scheduled and did not receive proper notice of the bankruptcy proceedings in time to file a claim or to participate in the confirmation process are not considered to have been provided for by the plan, and therefore would not be discharged. Id. at 1244 (citing In re Ryan, 78 B.R. 175, 183 (Bankr. E.D.Tenn 1987); In re Greenburgh, 151 B.R. 709, 716 (Bankr. E.D.Pa. 1993("[A]n omitted creditor, who receives no notice of any significant events in a Chapter 13 case, will not have the debt owed to that creditor discharged."); In re Cash, 51 B.R. 927, 929 (Bankr. N.D. Ala. 1985)("[I]t would be a strained construction to view the plan as *providing for a debt* owed to a creditor, when the debtor omits the debt and creditor from the Chapter 13 statement."))

Weatherford filed her petition for Chapter 13 relief on December 5, 2003. Weatherford did not list the Timmark Suit or its parties, including the Defendants, as creditors in her Schedules and Statement of Affairs. Moreover, Weatherford did not provide for, refer to, or otherwise acknowledge her debt to Defendants in her Chapter 13 plan. It appears that Defendants did not receive notice of Weatherford's Bankruptcy Case until after the deadline for creditors to file proofs of claim had passed and after Weatherford's Chapter 13 plan had been confirmed. Therefore, it appears that the cause of action or claim upon which the Timmark Suit was based would be a nondischargeable debt in Weatherford's Bankruptcy Case. See In re Plummer, 378 B.R. 569, 572 (Bankr. C.D. Ill. 2007)(discussing a pre-BAPCPA case)("[U]nscheduled debts are not discharged upon the completion of plan payments because such debts were not provided for by the plan.").

II.     **Does the postpetition procurement of the judgment in the Timmark Suit constitute a violation of the automatic stay pursuant to § 362 and, if so, what is its effect on the judgment?**

Upon the filing of a bankruptcy petition, the automatic stay of § 362 "operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against that debtor that was or could have been commenced before the commencement of the case under this title or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). The automatic stay is broad in scope and its operation is automatic upon the filing of the petition. Once the stay is in place, "it protects all property of the estate regardless of whether or not notice has been given of the pendency of the case." McGuffin v. Barman (In re BHB Enter., LLC), No. 97-01975-JW, Adv. Pro. 97-80201, 1997 WL 33344249 at *4 (Bankr. D.S.C. Aug. 27, 1997)(citations omitted); see also LaTempa v. Long (In re LaTempa), 58 B.R. 538, 540 (Bankr. W.D. Va. 1986)("Under § 362(a) the automatic stay is effective upon filing of the petition. It does not require actual notice to the creditors to be effective.") The purpose of the automatic stay is to "protect the debtor from harassment, bother and contact [from creditors] for a reasonable period of time and prevent creditors from engaging in a 'race of diligence.'" Miller v. Sav. Bank of Balt. (In re Miller), 22 B.R. 479, 481 (D. Md. 1982)(citing H. Rep. No. 94-495, Cong., 1st Sess. 340-2 (1977); S. Rep. No. 95-989, 95 Cong., 2d Sess. 49-51 (1978), U.S. Code Cong. & Admin. News 1978, p. 5787).

Timmark's judgment was obtained in December of 2005, while Weatherford's Bankruptcy Case was pending.  While it appears that the Defendants procured the judgment without knowledge of Weatherford's Bankruptcy Case, it is nevertheless true

that "the automatic stay goes into effect when the petition for relief is filed, not when the creditor learns that the petition has been filed." In re Clarkson, 168 B.R. 93, 94 (Bankr. D.S.C. 1994). Therefore, even if Defendants did not have notice of Weatherford's Bankruptcy Case, the automatic stay prohibited Defendants from obtaining the judgment in the Timmark Suit.

There is a split among the circuits as to whether an action taken in violation of the automatic stay is void or voidable. See In re Loy, No. 07-051040-SCS, 2008 WL 906503 at *6 (Bankr. E.D. Va. April 3, 2008). The Fourth Circuit has not ruled on this issue. See id. However, in this District, courts have consistently held that actions taken in violation of the automatic stay are void ab initio and thus not legally effective. In re BHB Enter. LLC, 1997 WL 33344249 at *4 ("The automatic stay does not merely prohibit creditors from taking actions against the debtor and the estate. Such actions are void *ab initio* and of no legal effect."); see also Felder v. Am. Gen. Fin. (In re Felder), C/A No. 97-05465-B, Adv. Pro. No. 98-80146, 2000 WL 33710885 (Bankr. D.S.C. July 7, 2000)(Bishop, J.)(noting "actions by creditors to collect a debt from the debtor, which are taken after the filing of a bankruptcy petition, are void *ab initio* and of no legal effect"); Anderson v. S.C. Nat'l Bank (In re McWhorter), 37 B.R. 742, 745 (Bankr. D.S.C. 1984)(Davis, J.)(noting "[a]ctions taken in violation of the automatic stay are void and without effect"). Furthermore, the Supreme Court of South Carolina has held that the automatic stay deprives state court judges "of subject matter jurisdiction to take any action inconsistent with the stay." Ex Parte Reichlyn, 310 S.C. 495, 499, 427 S.E.2d 661, 664 (1993). Therefore, the judgment obtained by Defendants, even if obtained without notice of Weatherford's Bankruptcy Case, is void *ab initio* and without legal effect. See In re

11

Halas, 249 B.R. 182, 192 (Bankr. N.D. Ill. 2000)(noting the fact that the violation "was inadvertent as opposed to willful does not alter the legal conclusion that the default judgment was void when it was entered (and even if 'voidable' precedent were correct, the judgment was properly voided after stay violation was established)").

**III.    Do Defendants' actions constitute a "willful" violation under § 362(h)?**

Section 362(h) provides for the recovery of actual damages, including costs and attorney's fees, as well as punitive damages when appropriate, for willful violations of the automatic stay. In order to recover under § 362(h), the plaintiff has the burden to prove five elements: "'(1) that a bankruptcy petition was filed, (2) that the debtors are 'individuals' under the automatic stay provision, (3) that the creditors received notice of the petition, (4) that the creditors' actions were in willful violation of the stay, and (5) that the debtor suffered damages.'" In re Sammons, 253 B.R. 672, 679-80 (Bankr. D.S.C. 2000)(citations omitted).    "A violation of § 362(h) must be proven by clear and convincing evidence." Bolen v. Mercedes Benz, Inc. (In re Bolen), 295 B.R. 803, 807 (Bankr. D.S.C. 2002) (citations omitted).

The parties do not dispute that the first two elements are satisfied.  Based on the evidence presented, it appears that the third and fourth elements are also satisfied. Although Defendants did not receive formal notice of Weatherford's Bankruptcy Case from the Bankruptcy Court, the March 2, 2006 *nulla bona* letter, which advised of Weatherford's bankruptcy filing and provided her bankruptcy case number (which indicated the year of the filing of the case), provided actual notice of the bankruptcy case to Defendants. Defendants had a duty of inquiry once they received notice of the filing, and in this case, "[m]inimal inquiry would have disclosed the filing . . . and also have

disclosed the invalidity of the state court judgment." <u>Walker v. Wilde (In re Walker)</u>, 91

B.R. 968, 973 (Bankr. N.D. Utah 1988). Knowledge of the bankruptcy "is the legal

equivalent of knowledge of the stay" and when a creditor acts intentionally with

knowledge of the bankruptcy then the violation becomes willful, regardless of whether

the creditor had a specific intent to violate the stay. [6] <u>See</u> <u>In re Galmore</u>, 390 B.R. at 901.

> The term "willful," as used in § 362(h), has been interpreted as follows:
>
> A "willful violation" does not require specific intent to violate the
> automatic stay. Rather the statute provides for damages upon a finding that
> the defendant knew of the automatic stay and that the defendant's actions
> which violated the stay were intentional. Whether the party believes in
> good faith that it had a right to the property is not relevant to whether the
> act was "willful" or whether compensation must be awarded.

<u>In re Johnson</u>, No. 97-06698-W, 2001 WL 1806979, at *5 (Bankr. D.S.C. June 26,

2001)(quoting <u>Boone v. Fed. Deposit Ins. Corp. (In re Boone)</u>, C/A No. 99-03864-W;

Adv. Pro. No. 97-80163-W (Bankr.D.S.C. July 28, 1998). The Fourth Circuit has

explained that a willful violation of the automatic stay occurs when "a creditor knows of

the pending bankruptcy petition and intentionally attempts to continue collection

procedures in spite of it." <u>Budget Serv. Co. v. Better Homes of Va., Inc.</u>, 804 F.2d 289,

---

[6] If Defendants had questions as to the scope or application of the stay, then Defendants should have
petitioned the court for guidance; however, a "creditor undertakes the risk of sanctions pursuant to section
362 when it attempts to interpret the application of the automatic stay and the scope of property to which it
applies." <u>In re Bolen</u>, 295 B.R. at 810(citations omitted); <u>see also</u> <u>In re Galmore</u>, 390 B.R. 901 (Bankr.
N.D. Ind. 2008)("If a creditor is uncertain about the applicability of the automatic stay, the creditor may
petition the court for clarification; otherwise, the creditor risks exposure under 11 U.S.C. § 362(k)(1)[(the
current version of the statute)] when he undertakes his own determination of the manner in which § 362(a)
affects his actions."); <u>Jennings v. R&R Cars & Trucks (In re Jennings)</u>, C/A No. 01-02330-W, Adv. Pro.
01-80044-W, 2001 WL 1806980, at *4 (Bankr. D.S.C. 2001)(noting that if Defendant/Creditor has
questions regarding its obligations under the stay, then "it was incumbent upon it to affirmatively raise such
issues" with the Court); <u>In re La Tempa</u>, 58 B.R. at 541 (noting that "if there is uncertainty about . . . the
applicability of the automatic stay, a creditor may petition the court for clarification and, if the creditor does
not, he takes the risk of being held in contempt); <u>cf. Crysen/Montenay Energy Co. v. Esselen Assoc., Inc.</u>,
902 F.2d 1098, 1105 (2nd Cir. 1990)(describing that a purpose in awarding damages under § 362(h) for
violations of the automatic stay is that an award "encourages would-be violators to obtain declaratory
judgments before seeking to vindicate their interests in violation of the automatic stay and thereby protects
debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations").

293 (4th Cir. 1986); see also Bolen, 295 B.R. at 807; Atlas Mach. & Iron Works, Inc. v.

Bethlehem Steel Corp. (In re Atlas Mach. & Iron Works, Inc.), 239 B.R. 322, 329 (Bankr.

E.D. Va. 1998)(quoting Citizens Bank of Md. v. Strumpf, 37 F.3d 155, 159 (4th Cir.

1994)(rev'd on other grounds, 516 U.S. 16, 116 S.Ct. 286, 133 L.E.2d 258 (1995))("The

Fourth Circuit has determined that to constitute a willful violation under § 362(h), the

creditor need not act with specific intent but must only commit an intentional act with

knowledge of the automatic stay."). Moreover, "[i]gnorance of bankruptcy law does not

excuse anyone involved in a willful violation." In re Halas, 249 B.R. at 191; see e.g.,

Hanna Coal Co. v. I.R.S., 218 B.R. 825, 832 (W.D. Va. 1997)(concluding that as "the

IRS knew of Hanna's bankruptcy, the court attributes to the IRS the knowledge that a

bankruptcy filing gives rise to an automatic stay").

A.    **Initial Collection Efforts**

Section 362(a)(4) stays acts to create, perfect or enforce liens against property of

the estate.   On January 6, 2006, Weidner signed a writ of execution on behalf of

Defendants to collect on the Timmark Suit judgment.[7]   This initial effort of the

Defendants to enforce their lien by levying on Weatherford's property constitutes a

violation of the automatic stay pursuant to § 362(a)(4).  However, the Court finds that

this collection effort was not a "willful" violation of the stay, because the Court is not

convinced by clear evidence that Defendants had notice of the filing of Weatherford's

Bankruptcy Case at the time the writ of execution was first signed.

B.    **Collection Efforts Following Receipt of March 2, 2006 *Nulla Bona* Letter**

---

[7]     South Carolina Rule of Civil Procedure 69 provides that "[p]rocess to enforce a judgment for the payment of money shall be a writ of execution."

Upon receiving notice of the Bankruptcy Case from the Sheriff via the March 2, 2006 *nulla bona* letter, Defendants were obligated to determine the effect of the bankruptcy case, including that the judgment had been obtained in violation of the stay. Upon learning that the judgment was void, no further efforts to execute on that judgment should have taken place. After the dismissal of Weatherford's Bankruptcy Case in March of 2006, Schwartz on behalf of Defendants directed the Sherriff's Office to re-work the execution.[8] As a result of this directive, the Sherriff's Office posted a notice of levy on Weatherford's house. To prevent the sale of her property, Weatherford made two payments to the Sherriff's Office, totaling $14,758.56. Weidner accepted these funds on behalf of Defendants. The payments by Weatherford were not voluntary but were made as a direct result of the threat of levy from the Sheriff, which was based upon a writ of execution that should have been cancelled, withdrawn, or no longer enforced by Defendants. While it is true that no automatic stay existed between the dates of March 10, 2006 and May 11, 2006, the period during which the payments were made, it does not change the fact that the payments were made as a direct result of Defendants' efforts to collect a void judgment and an execution based thereon.[9] The dismissal of the case did not revive or validate the judgment otherwise voided by the automatic stay—it only cleared the way for Defendants to request that the nondischargeable claim to be allowed

---

[8]    Schwartz learned in March of 2006 that Weatherford's Bankruptcy Case had been dismissed and this fact was verified by Weidner through checking the bankruptcy court's records via PACER. The PACER report of Weatherford's Bankruptcy Case would have also disclosed the filing date of the petition and the subsequent events of the case, which should have also revealed that the judgment in the Timmark Suit was rendered in violation of the automatic stay and therefore was a void judgment. However, Weidner only checked the final entry in order to confirm the dismissal and took no steps to discern the law concerning the automatic stay.

[9]    The vacation of the dismissal of Weatherford's Bankruptcy Case on May 11, 2006 did not retroactively reinstate the stay during the period when the case was dismissed. In re Jennings, 2001 WL 1806980, at*3.

to proceed.[10] See In re Keuler, 389 B.R. 406, 408 (Bankr. M.D.Pa. 2008)("Violations of the automatic stay are not validated by the dismissal of the bankruptcy."). The post dismissal enforcement of a judgment voided by the automatic stay is itself a violation of the stay.[11] See Willman v. Pollard (In re Willman), 192 B.R. 207 (Bankr. D. Ariz. 1996)(holding that post dismissal sale of debtor's property was void because acts taken in furtherance of the sale during the pendency of the case violated the automatic stay). As stated below, it also follows that the retention of the payments collected as a result of the void judgment would also be a violation of the stay.

The second *nulla bona* letter, dated June 26, 2006, also gave Defendants notice of the existence and re-instatement of Weatherford's Bankruptcy Case. The second letter provided the identical case number as the first *nulla bona* letter. Even though Weidner may have incorrectly assumed that the second letter was a duplicate and of no importance, minimal inquiry would have disclosed the re-instatement of Weatherford's Bankruptcy Case. When a creditor is put on notice of a debtor's bankruptcy case, "the burden remained with [the creditor] to continue monitoring the status of [the debtor's] bankruptcy if they were going to proceed with any collection action over the course of the following months." Clayton v. King (In re Clayton), 235 B.R. 801, 808 (Bankr. M.D.N.C. 1998).

After the reinstatement of Weatherford's Bankruptcy Case on May 11, 2006, the Defendants had a duty to return the payments made by Weatherford. See Legrand v.

---

[10]        Section 349 addresses the effect of the dismissal of a bankruptcy case. Nothing in this section provides that the dismissal validates judgments obtained in violation of the automatic stay. Had Congress intended for the dismissal of the case to have such an effect, it could have included such a provision within this section.
[11]        Defendants did not seek to validate their judgment by seeking retroactive annulment of the automatic stay. See In re Scott, 260 B.R. 375, 381 (Bankr. D.S.C. 2001).

Dep't of Hous. & Urban Dev. & IRS (In re LeGrand), C/A No. 98-01921-W, Adv. Pro. 98-80166-W, 1999 WL 33486087, at *4 (Bankr. D.S.C. March 8, 1999)(citations omitted)(noting that "[m]ost courts appear to accept the premise that once a creditor has been notified of the bankruptcy filing, the creditor has a duty to restore the status quo; that is, the creditor should undo its post-petition collection activities without the debtor having to seek affirmative relief from the bankruptcy court); In re McMullen, 386 F.3d 320, 330 (1st Cir. 2004)(noting that "a creditor that commits a technical violation of the automatic stay due to lack of notice, has an affirmative duty to remedy the violation as soon as practicable after acquiring notice of the stay"); In re LaTempa, 58 B.R. at 542 ("[T]he retention of an improved position gained by the creditor in violation of the stay is itself a continuing violation of the stay, and done knowingly is grounds for contempt."); see also Diviney v. Nationsbank of Tex., N.A. (In re Diviney), 225 B .R. 762, 776 (10th Cir. B.A.P. 1998); Will v. Ford Motor Credit Co. (In re Will), 303 B.R. 357, 364 (Bankr. N.D. Ill. 2003); In re Freemyer Indus. Pressure, Inc., 281 B.R. 262, 267-268 (Bankr. N.D. Tex. 2002); In re Taylor, 190 B.R. 459, 461 (Bankr. S.D. Fla. 1995); Bunch v. NCNB S.C. (In re Bunch), 119 B.R. 77, 80 (Bankr. D.S.C. 1990); Adams v. Phila. Hous. Auth. (In re Adams), 94 B .R. 838, 851 (Bankr. E.D. Pa. 1989). After the reinstatement of the case, Weatherford retained rights to the funds as property of the bankruptcy estate since the payments were involuntarily made as a direct result of a void execution.

Defendants did not make a motion to vacate the judgment until November 17, 2008,[12] and have yet to return the payments made by Weatherford. Moreover, despite having received Fairbanks' letters in August of 2006, which advised that Defendants should return the payments made by Weatherford, that the judgment should be vacated,

---

[12]    The Court is unaware of post trial results of this effort.

that actual notice was not required in order to violate the stay and that a creditor who violates the stay must "un-do" the effects of a stay violation, whether or not it was willful, Defendants apparently did not inquire into what their obligations were under the law in the face of such facts nor did they return Weatherford to the status quo.

The Court finds that the Defendants' maintenance or renewal of collection efforts after first learning of the bankruptcy case and the continued retention of property of Weatherford's estate following receipt of actual notice of Weatherford's Bankruptcy Case constitutes a willful violation of the automatic stay pursuant to § 362(h). The Court further finds that the state court judgment is void as a consequence of the automatic stay and the Defendants' failure to vacate or cancel the judgment is a violation of the stay. Weatherford is entitled to cancellation of the state court judgment, a return of both payments made on account of the void judgment, pre-judgment interest on the payments from the receipt of the second *nulla bona* letter, damages for emotional distress, and reasonable attorney's fees.[13]

### IV.    What is the amount of damages Debtor suffered as a result of Defendant's willful violations of the automatic stay?

The Code provides that "[a]n individual injured by any willful violation of a stay provided by this section *shall* recover actual damages, including costs and attorneys' fees,

---

[13]    The Court would award like relief under its equitable powers of 11 U.S.C. § 105(a). Section 105 provides the Court with broad equitable powers. See In re Kestell, 99 F.3d 146 (4th Cir. 1996). This includes the power to *sua sponte* take any action necessary to prevent abuse of process that would undermine the integrity of the bankruptcy system. See id. at 149 (citing In re Calder, 93 B.R. 739, 740 (Bankr. D. Utah 1988)). Section 105 also allows the bankruptcy court to close loopholes that would otherwise result in abuse of the bankruptcy process. See Tidewater Finance Co. v. Williams (In re Williams), 498 F.3d 249, 258 (4th Cir. 2007). Actual and punitive damages may be awarded to a debtor for a creditor's misconduct pursuant to 11 U.S.C. § 105(a). See Workman v. GMAC Mortgage, LLC (In re Workman), 392 B.R. 189 (Bankr. D.S.C. 2007). Defendants' misconduct in executing on a judgment, voided by the Bankruptcy Code, is precisely the type of abuse of process that 11 U.S.C. § 105(a) may remedy and warrants awarding Weatherford actual and punitive damages, in the amounts awarded herein, assuming that relief under 11 U.S.C. § 362(h) was unavailable.

and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h)
(emphasis added).

## A.    Actual Damages

For reasons analyzed above, the Court holds that Weatherford's two payments
made involuntarily on account of the void judgment should have been returned as of June
26, 2006. The wrongful retention of Weatherford's payments and their resulting
exclusion from the property of the estate, denied the estate the ability to use or earn
interest on those funds. See In re Sucre, 226 B.R. at 349. Therefore, Weatherford is
entitled to both the return of the $14,758.56 as actual damages and prejudgment interest
on those funds, which "serves to compensate for the loss of money due as damages from
the time the claim accrues until judgment is entered, thereby achieving full compensation
for the injury those damages are intended to redress." W. Va. v. U.S., 479 U.S. 305, 310
n.2, 107 S. Ct. 702, 93 L.E.2d 639 (1987)). Prejudgment interest also serves to
compensate Weatherford for "the lost time value" of her money. In re Sucre, 226 B.R. at
349 (citations omitted). Courts generally use the federal post judgment rate of interest as
set out in 28 U.S.C. § 1961 in computing prejudgment interest, which would be 5.24% in
this case.[14] Id. at 350. Therefore, the Court finds that Weatherford is entitled to the sum
of $14,758.56 plus prejudgment interest on $14,758.56 at the rate of 5.24% from June 26,
2006, to the date of the entry of this Order.[15]

---

[14]      Section 1961 directs interest be "calculated from the date of the entry of the judgment, at a rate
equal to the weekly average 1-year maturity yield, as published by the Board of Governors for the Federal
Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961. The
postjudgment interest rate applied for the week preceding the issuance of the second *nulla bona* letter is
5.24%.
[15]      Since the state court judgment is void, Defendants merely have a colorable claim against
Weatherford subject to defenses and possible counterclaims.

Weatherford is also entitled to damages for emotional distress. Courts have recognized that emotional distress damages are allowable actual damages under § 362. In re Johnson, 2001 WL 1806979, at *5. Although Weatherford did not present evidence of a medical injury to demonstrate the distress or harm she suffered, she did present credible and convincing testimony indicating that she suffered from anxiety and depression as a result of Defendants' actions, conditions requiring medication and counseling. See e.g., Young v. Elite Fin. Serv., Inc. (In re Young), C/A No. 04-10260-W, Adv. Pro. 04-80353-W (Bankr. D.S.C. Sept. 15, 2005); Covington v. IRS (In re Covington), 256 B.R. 463, 467 (Bankr. D.S.C. 2000). Based on the evidence presented, the Court finds that an award of damages for emotional distress in the amount of $1000.00 is appropriate in this case.

**B.    Attorney's Fees**

Weatherford also requests an award of damages for the attorney's fees and costs she incurred as a result of pursuing this adversary proceeding.  Fairbanks submitted an affidavit in support of this request. The Court has reviewed the fees listed in the affidavit and finds Fairbanks' billing rates of $150.00 per hour for himself and $50.00 per hour for his paralegal to be reasonable for the necessary services rendered in this case. The Court has reviewed many attorneys' fee requests in similar actions and is well aware that the billing rates being requested are at or below the prevailing market rate in South Carolina for this type of work.  However, the Court finds the total requested amount of $17,725.00 is excessive given the application of the lodestar method to this case.  The Court finds that an award of attorney's fees in the amount of $12,500.00 is reasonable in light of the circumstances of this case. See Daly v. Hill, 790 F.2d 1071, 1077 (4th Cir. 1986)(utilizing the lodestar method to determine the reasonableness of attorney's fees).

### C.    Punitive Damages

Weatherford also seeks an award of punitive damages. Section 362(h) allows punitive damages to be awarded in appropriate circumstances. See 11 U.S.C. § 362(h). The Court finds that punitive damages are appropriate in this case in light of the fact that Defendants knew or should have known about the effect of the filing of Weatherford's Bankruptcy Case upon being advised of the existence of the case. Defendants disregarded the protections afforded to Debtor by the automatic stay by maintaining their collection efforts and obtaining payment from Weatherford by threatening to sell her home. Nevertheless, the Court recognizes that the facts of this matter were made more complicated in part due to the Weatherford's actions in failing to list any of the Defendants as creditors and her actions resulting in the dismissal and reinstatement of Weatherford's Bankruptcy Case.    Accordingly, the Court finds that under the circumstances of this case, an award of punitive damages in the amount of $4,000 is appropriate.[16]

### CONCLUSION

Based on the foregoing, it is hereby

ORDERED that:

(1)    The state court judgment is void; Defendants shall take the necessary steps to cancel the state court judgment within ten (10) days of the entry of this Order and the failure to comply shall constitute a continuing violation of the automatic stay; Either Plaintiff or Defendants may file a copy of this Order in the state court record;

---

[16]    The Court finds it unnecessary to address the issue of sanctions for contempt of court at this time.

(2)     The cause of action or claim upon which the state court judgment was

based is a nondischargeable debt;

(3)     Defendants and the Sheriff's Office of Beaufort County shall cease all

collection efforts based upon the void state court judgment; and

(4)     Defendants shall be jointly and severally liable to Weatherford for actual

damages in the amount of $14,758.56, plus 5.24% prejudgment interest on

$14,758.56 from June 26, 2006 to the date of the entry of this Order;

$1,000.00 in emotional distress damages, $12,500.00 in attorney's fees;

and $4,000.00 in punitive damages.

**AND IT IS SO ORDERED.**

_John E Waites_

UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
April 6, 2009